Michael D. Pogue, ISB No. 6518
GRAVIS LAW, PLLC
P.O. Box 3020
Sun Valley, ID 83353
Telephone: (208) 290-9000
Email: mpogue@gravislaw.com

*Attorney for Movants*
Altice USA, Inc. and CSC Holdings, LLC

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF IDAHO**

| | |
|---|---|
| **ALTICE USA, INC. and CSC HOLDINGS, LLC,**<br><br>  **Movant,**<br><br>vs.<br><br>**OPSEC ONLINE LLC,**<br><br>  **Respondent** | Case No.<br><br>**Underlying Litigation:**<br>*Warner Records Inc., et al. v. Altice USA, Inc., et al.*, Case No. 2:23-cv-576 (E.D. Tex.)<br><br>***TRANSFER TO E.D.T.X. REQUESTED***<br>***ORAL ARGUMENT REQUESTED*** |

**ALTICE USA, INC. AND CSC HOLDINGS, LLC'S
MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO COMPEL
THIRD PARTY OPSEC ONLINE LLC'S
COMPLIANCE WITH ITS SUBPOENA *DUCES TECUM*
<u>WITH RESPECT TO REQUESTS 21, 25–29, AND 33</u>**

## INTRODUCTION

Altice USA, Inc. *et al.* hereby moves to compel OpSec Online LLC ("OpSec") to comply with Requests 21, 25–29, and 33 in a third-party subpoena issued in a copyright litigation brought against Altice by many of the largest record labels and music publishers[1] (collectively, "Plaintiffs") in the Eastern District of Texas (the "Underlying Litigation").[2] *See Warner Records, Inc. et al. v. Altice USA, Inc., et al.*, Case No. 2:23-cv-00576 (E.D. Tex.). OpSec consents to transfer this motion to that District, and Altice respectfully requests the Court transfer the motion accordingly.

Plaintiffs allege that between 2020 and 2023, Altice, an internet service provider ("ISP"), knew that some subscribers infringed Plaintiffs' works by downloading copies of Plaintiffs' music using peer-to-peer ("P2P") file-sharing technology without authorization. Plaintiffs seek to hold Altice secondarily liable. Fact discovery closes in March 2025, and trial is set for September 2025.

OpSec is a software company often hired by Plaintiffs—through a specific agreement with Plaintiffs' agent, the Recording Industry Association of America ("RIAA")—to monitor and detect online piracy. OpSec relies on software to identify alleged infringement and to generate notices of infringement that it sends to ISPs, such as Altice (the "OpSec System"). The OpSec System was used to detect *every* alleged instance of infringement by Altice's subscribers and send *every* notice of infringement that Plaintiffs rely on in the Underlying Litigation. The OpSec System's accuracy and efficacy are therefore foundational to Plaintiffs' claims and, critically, at the heart of Altice's defenses.

On July 18, 2024, Altice served a third-party subpoena on OpSec seeking evidence

---

[1] Plaintiffs in the Underlying Litigation are numerous record companies including Warner Records Inc., Atlantic Recording Corporation, Atlantic Records Group LLC, Sony Music Entertainment, and Arista Records, LLC.

[2] A parallel motion was filed to compel OpSec to comply with Request 14 of the subpoena.

concerning, among other things, (1) the P2P program using the OpSec System to detect alleged infringement and send notices of alleged infringement to Altice ("P2P Notice Program"); (2) technical assessments of the OpSec System; (3) the Copyright Alert System ("CAS"); and (4) complaints about the OpSec System or related services. After conferring on OpSec's objections, Altice and OpSec are at an impasse. Altice respectfully asks this Court to grant the motion.

## LEGAL STANDARD

Federal Rule of Civil Procedure 45 governs the use of subpoenas, providing, among other things, that third parties may be compelled to produce "documents, electronically stored information, or other tangible things." Fed. R. Civ. P. 45(a). The scope of discovery that can be requested through a Rule 45 subpoena tracks the liberal standard made applicable to Rule 26(b)(1). *See Kendrick v. Heckler*, 778 F.2d 253, 257 (5th Cir. 1985). Thus, third-party subpoenas may compel the production of any evidence concerning "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). Evidence is "relevant" so long as it "bears on" or might reasonably lead to information that "bears on" any material fact or issue. *See Oppenheimer Fund Inc. v. Sanders*, 437 U.S. 340, 351 (1978).

Rule 45 also authorizes courts to quash or modify a subpoena if it is unduly burdensome. Fed. R. Civ. P. 45(d)(3)(A)(iv). But this requires the opposing party to make a specific and detailed showing of how the request is "unreasonable and oppressive" by submitting affidavits or offering evidence revealing the nature of the burden. *See Wiwa v. Royal Dutch Petroleum Co.*, 392 F.3d 812, 818 (5th Cir. 2004) (quotation omitted). Pertinent factors include: (1) the requested information's relevance; (2) the need for the evidence; (3) the breadth of the request; (4) the period covered by the request; (5) the particularity with which the party describes the requested evidence; and (6) the burden imposed. *Id.*

## ARGUMENT

I. **This Court Should Transfer the Motion to the Eastern District of Texas**

The Underlying Litigation is pending in the Eastern District of Texas. Federal Rule of Civil Procedure 45 provides that any motion to compel compliance with a subpoena must be brought in the "court for the district where compliance is required." Fed. R. Civ. P. 45(d)(2)(B)(i). As such, Altice filed this motion in the District of Idaho—the location of OpSec's headquarters and the place requested for the subpoena's compliance. Declaration of Diana Hughes Leiden ("Leiden Dec.") ¶ 2. However, where, as here, "the court where compliance is required did not issue the subpoena, it may transfer a motion under this rule to the issuing court if the person subject to the subpoena consents." *See* Fed. R. Civ. P. 45(f). OpSec consents to the motion's transfer. Leiden Dec. ¶ 4. Thus, Altice requests this Court transfer the motion to the Eastern District of Texas.

II. **Documents and Communications Concerning the P2P Notice Program Relating to Notices of Alleged Infringement Sent to Altice (RFP No. 21)**

First, Altice requested from OpSec documents and communications concerning the P2P Notice Program.[3] As described above, the notices that OpSec sent to Altice were sent pursuant to an agreement between the RIAA and OpSec, and Altice seeks from OpSec documents and communications relating to that program. These documents are critically relevant because they bear on the reliability of the OpSec System, the accuracy of the notices, the motivations of Plaintiffs and/or the RIAA in targeting Altice, and the relative number of notices sent to Altice as opposed to other ISPs, among other relevant subjects.

OpSec initially refused to produce any materials in response to this request. Leiden Dec.

---

[3] Stated in full, Request 21 sought "Documents and Communications concerning the Peer-to-Peer Notice Program relating to notices of alleged infringement sent to Altice." OpSec's verbatim response can be found in paragraph 2 of the Leiden Declaration.

¶¶ 2–3. Subsequently, during the parties' October 2 meet and confer, OpSec agreed to produce internal documents responsive to Request 21. *Id.* ¶ 4. Nevertheless, OpSec refuses to *fully* comply; it is OpSec's position that Altice should seek any responsive communications between OpSec and the Plaintiffs or RIAA from those parties instead. *Id.*

Altice has sought documents and communications from Plaintiffs relating to the P2P Notice Program and does not seek those same documents from OpSec. But OpSec's communications regarding the relevant notice program were largely with the RIAA as opposed to Plaintiffs directly because the RIAA and OpSec were parties to the relevant agreement. Further, Altice has already subpoenaed the RIAA (another third party) for these materials, and the RIAA similarly resists producing them—agreeing only to produce the underlying agreements with OpSec, but refusing to produce any relevant documents and communications about the P2P Notice Program. OpSec should also be compelled to produce its communications with other third parties responsive to Request 21, about which Altice is in the dark. Thus, Altice respectfully requests that the Court compel OpSec to full comply with Request 21.

### III. Documents and Communications Relating to the CAS (RFP Nos. 27–29)

Second, Altice sought documents and communications relating to the CAS and its connection to the OpSec System. These documents include technical assessments relating to the reliability and efficacy of the OpSec System authored by third parties Stroz Friedberg and Harbor Labs in connection with the CAS.[4] However, OpSec refuses to even search for the relevant

---

[4] Stated in full, Request 27 sought "[a]ll Documents and Communications concerning the 'Independent Expert Assessment of MarkMonitor Anti-Piracy Methodologies' conducted by Stroz Friedberg." Request 28 sought "[a]ll Documents and Communications concerning the 'Evaluation of the MarkMonitor AntiPiracy System' conducted by Harbor Labs." And Request 29 sought "[a]ll Documents and Communications between You and any Plaintiff(s), the RIAA, or any other third party concerning the CAS." OpSec's verbatim responses to each Request can be found in paragraph 2 of the Leiden Declaration.

documents. *See* Leiden Decl. ¶¶ 2–4.

As background: The CAS was an agreement between major ISPs, content owners, the RIAA, and the Motion Picture Association of America to deter online copyright infringement. The CAS Memorandum of Understanding ("MOU") required participating ISPs to develop, implement, and enforce copyright alert programs under which copyright owners would send infringement notices to participating ISPs (to be forwarded to subscribers), set out steps for ISPs to take in response to multiple notices relating to a single subscriber, and established limits to the number of notices an ISP was required to process.[5] MarkMonitor was chosen as the exclusive vendor for these anti-piracy services, and it was in the context of CAS that third parties Stroz Friedberg and Harbor Labs conducted technical assessments of MarkMonitor's system (which is largely the same as the OpSec System after OpSec acquired MarkMonitor's anti-piracy assets).

Documents in OpSec's possession, custody, or control relating to any assessments of its system conducted in connection with CAS are therefore relevant to its functionality, reliability, and accuracy. Those assessments are particularly important given that OpSec claims that it has not performed any periodic evaluations, testing, or analysis of the OpSec System in the regular course of business. *See id.* ¶ 2.

During the meet and confer process, OpSec proposed an empty compromise: to produce responsive documents regarding CAS, *but only for the time period December 1, 2020 to December 31, 2023*. *Id.* ¶¶ 2–4. This makes no sense, since CAS was in effect from 2013 to 2017, and the technical assessments of the OpSec System performed as part of CAS were conducted in 2013 and 2014. Because responsive documents are likely to be dated well before 2020, OpSec's "agreement" to produce is a blanket refusal veiled as compromise, and improper, particularly in light of its

---

[5] A public version of the MOU is found here: https://info.publicintelligence.net/CCI-MOU.pdf.

failure to point to any concrete burden associated with searching for and producing these documents. *See id.* Indeed, OpSec refuses to even investigate whether it has these documents and how far back in time it has maintained emails and documents. *Id.* Notably, the District of Colorado ordered MarkMonitor to produce documents relating to the CAS in a similar litigation. *See Warner Bros. Records Inc., et al. v. Charter Commc'ns, Inc.*, Case No. 19-cv-00874 (D. Colo. Oct. 5, 2020), ECF No 253.

### IV. Documents concerning inaccurate notices and complaints about OpSec's technology and services (RFP Nos. 25–26, and 33)

Finally, OpSec refuses to fully comply with Requests 25, 26, and 33, which relate to (i) inaccurate and/or duplicative notices produced by the OpSec System, as well as (ii) complaints about OpSec's technology and services—including customer complaints, communications with notice recipients, investigation records, call center logs, and any records of withdrawn or corrected notices.[6] These documents are highly relevant to Altice's defenses because they are testaments to the reliability and efficacy of the OpSec System and the accuracy of the notices sent to Altice.

Initially, OpSec only agreed to produce "call logs" relating to the P2P Notice Program under which infringement notices were sent to Altice, along with documents containing the word "complaint." Leiden Decl. ¶¶ 2–3. After Altice explained that relevant documents were unlikely to include "complaint," OpSec agreed to review Altice's proposed search terms. *Id.* During the

---

[6] Stated in full, Request 25 sought "[a]ll Documents and Communications concerning Your efforts to identify, investigate, rectify, or otherwise respond to instances of inaccurate and/or duplicative notices You sent, including but not limited to customer complaints, Your Communications with notice recipients, investigation records, call center logs, and any records of withdrawn or corrected notices." Request 26 sought "[a]ll Documents and Communications concerning claimed or actual inaccurate and/or duplicative notices You sent." And Request 33 sought "[a]ll Documents relating to any complaints made against You or Your services relating to Peer-to-Peer File Sharing Technologies, whether from recipients of notices of alleged infringement or otherwise, including all Documents relating to any lawsuits or investigations relating to Your services." OpSec's verbatim responses to each can be found in paragraph 2 of the Leiden Declaration.

parties' October 2 meet and confer, OpSec explained that it ran the search across five custodians and got over 100,000 hits. *Id.* ¶ 4. But based on a review of a small sample, OpSec concluded that the search produced mishits. *Id.* Nonetheless, OpSec agreed to run a more targeted search term, and Altice proposed the following in response: ("Peer to Peer" OR "P2P" OR "DMCA" OR "copyright") AND ("notice!" OR "infring!" OR "torrent!") AND ("repeat" OR "duplicat!" OR "complain!" OR "error!" OR "inaccura!" OR "error" OR "bug"). *Id.* To date, however, OpSec has failed to run the revised search terms, or propose any further compromise. *Id.* Therefore, Altice respectfully requests the Court to compel production in compliance with Requests 25, 26, and 33.

## V.   CONCLUSION

For the foregoing reasons, Altice respectfully requests that the Court transfer this motion to the Eastern District of Texas; or, in the alternative, overrule OpSec's improper objections and order OpSec to produce documents responsive to Requests 21, 25–29, and 33.

Dated: October 22, 2024                    Respectfully submitted,

                                          GRAVIS LAW, PLLC

                                          By: *Michael Pogue*
                                              Michael D. Pogue
                                              Attorney for Movants

**CERTIFICATE OF SERVICE**

I certify that on October 22, 2024, a copy of the foregoing Movants' Motion to Compel Compliance with Altice's Subpoena *Duces Tecum* with Respect to Request 14 was served by email and via Federal Express on the following:

Timothy Reynolds
Bryan Cave Leighton Paisner LLP
One Boulder Plaza
1801 13th Street, Suite
Boulder, CO 80302-5386
Tel.: (303) 417-8510
Email: timothy.reynolds@bclplaw.com

*Counsel for the Respondent*
*OpSec Online LLC*

*Michael Pogue*
_____
Michael D. Pogue, ISB No. 6518
GRAVIS LAW, PLLC
P.O. Box 3020
Sun Valley, ID 83353
Telephone: (208) 290-9000
Email: mpogue@gravislaw.com

*Attorney for Movants*
Altice USA, Inc. and CSC Holdings, LLC